UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

PAUL STEWART,                                        :

                                    Petitioner,      :

        -against-                                    :

WILLIAM LEE, Superintendent, Green                   :
Haven Correctional Facility,                         :
                                                     :
                                    Respondent.      :
                                                     :
-------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 3 - 2014  ★

BROOKLYN OFFICE

<u>MEMORANDUM & ORDER</u>

09-cv-4374 (ENV)

VITALIANO, D.J.,

        Petitioner Paul Stewart, appearing *pro se*, brings this petition for a writ of

*habeas corpus*, pursuant to 28 U.S.C. § 2254, against William Lee, superintendent of

the Green Haven Correctional Facility. On June 22, 2006, Stewart was convicted,

after a jury trial, in Supreme Court, Queens County, on two counts of robbery in

the first degree, and one count of criminal possession of a weapon in the fourth

degree. Stewart argues that he was denied effective assistance of counsel. Separately,

he also claims that he was deprived of due process by an unduly suggestive lineup

and prosecutorial misconduct at trial. Respondent contends that Stewart's claims

are, at least in part, procedurally barred, and, in any event, that, substantively, none

can support federal habeas relief.

<u>Background</u>

        During the early morning hours of October 31, 2004, Stewart entered a

Sunoco gas station in Astoria, Queens, and asked the attendant, Kailash Chandola,

1

for coffee. Chandola went to the bathroom to clean the coffee pot. Stewart followed, carrying an ax, which he brandished while telling Chandola that if he did not give him all of his money, he would chop his head off. Chandola threw his money to the floor—Stewart then ordered Chandola to stay in the bathroom while he took the cash from the register. After unsuccessfully attempting to open the register, Stewart returned to the bathroom and demanded that Chandola tell him how to open it. Chandola did; Stewart then emptied the register, and made his escape. After waiting for a few minutes, Chandola left the bathroom and called for the police.

Detective Richard Ellis of the New York City Police Department ("NYPD") responded to the scene, and Chandola told him that the culprit was a white male with a dark mustache, in his mid-40s, that he was approximately 5'11" and 160 pounds, driving an older-model tan Cadillac. The next day, Chandola reported to the police station to identify a vehicle and to view a lineup. The vehicle had been recovered by an NYPD detective and towed to the precinct. An ax had been found in the vehicle's back seat. Chandola identified both the car and the ax as those belonging to the robber. Stewart, meanwhile, was voluntarily present at the precinct in connection with another investigation, namely, the murder of Stewart's friend, Guy Butera. In a TV script twist, the Cadillac identified by Chandola had belonged to Butera. Stewart was soon placed in a lineup, which led to his identification by Chandola as his assailant. Stewart was then charged with two counts of robbery and one count of criminal possession of a weapon.

Petitioner moved before trial to suppress Chandola's identification of him at the lineup. Arguing that it had been unduly suggestive, Stewart claimed that he was

2

the only man in the lineup with a dark mustache, as described by the witness. (Suppress. Hr'g Tr. 25:28–29). Stewart asserted that, of the five "fillers" in the lineup, one had no mustache, and one had a goatee in addition to a mustache. (*Id.*). On the other hand, all the men in the lineup were white, with similar skin tones, and all were asked to wear identical baseball caps; they were also asked to sit, to account for variations in height. *See People v. Stewart*, 51 A.D.3d 826, 859 N.Y.S.2d 663 (2d Dep't 2008) (ruling that the lineup was not suggestive for these reasons). Justice Mark H. Spires denied suppression of the identification, and trial commenced before Justice Ronald D. Hollie.

At trial, though, when he was asked to identify the man who had robbed him, Chandola was unable to pick out Stewart, who no longer had a mustache. (Tr. 630–31:3–18; 704:7–25). Chandola was then shown a photograph depicting Stewart with a mustache. The photo prompted him to recall that the picture was of the man he had identified at the lineup. (Tr. 706:11–25). Chandola testified further that he had been told an NYPD officer, prior to the lineup, that a suspect was in custody. (Tr. 880:21–23). Stewart's attorney moved for a mistrial on the basis of the prosecutor having shown Chandola Stewart's photo to aid in the witness's in-court identification, (Tr. 756–57:23–14), but he did not move to reopen the suppression hearing. The motion for a mistrial was denied.

The prosecutor's summation included a series of comments which Stewart now claims constituted misconduct. On a few occasions during summation, the trial court admonished the prosecutor to restrict her summation to the admitted evidence, *e.g.* (Tr. 1057:12–21; 1069:17–20; 1070:18–19), and at one point

3

reprimanded the prosecutor for comments that were "absolutely improper." (Tr. 1084:21–22). Singled out for criticism was the prosecutor's contention that Stewart's missing mustache at trial constituted "a deliberate attempt to make sure Mr. Chandola [couldn't] pick [him] out," demonstrating "[c]onsciousness of guilt." (Tr. 1084:10–16). She also implied that Stewart had cooperated with police in appearing at the precinct because "he knew the gig was up." (Tr. 1066:25–2). Following summation, in line with his previous objections, Stewart's attorney again moved for a mistrial, citing these comments and others, and also pressed that the prosecutor had repeatedly ignored court directives to avoid injecting facts not in evidence into her argument.[1] (Tr. 1121–24:10–23). The court denied Stewart's renewed motion for a mistrial, and the jury returned a guilty verdict on all three counts.

On direct appeal to the Appellate Division, Stewart argued that his due process right to a fair trial had been violated by the unduly suggestive lineup and prosecutorial misconduct at summation, and that he did not receive effective assistance of counsel because his lawyer failed to reopen the suppression hearing after hearing testimony that Chandola was aware that a suspect was in custody. In a brief opinion, the Second Department affirmed Stewart's conviction, *Stewart*, 51 A.D.3d at 826, 859 N.Y.S.2d at 663, and the Court of Appeals declined to hear the

---

[1] Petitioner also notes that the prosecution committed other acts of misconduct to which his attorney did not object. The failure to object contemporaneously makes the claims unpreserved, unexhausted, and procedurally defaulted. *See* discussion *infra*. Though the challenged errors still might support a properly preserved ineffective assistance of counsel claim, they are, in this case, substantively without merit for either purpose.

4

case. On September 29, 2009, Stewart timely filed this petition, reiterating all of the claims that he raised on appeal below. He is currently serving his indeterminate prison term of 25 years to life at Green Haven Correctional Facility in Stormville, New York.

Standard of Review

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a writ of habeas corpus shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's decision: (1) "was contrary to," or involved an unreasonable application of, "clearly established federal law" as determined by the United States Supreme Court, or, (2) "was based on an unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d) ("§ 2254(d)"); *see also Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

Where AEDPA deference applies, "a state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)). For the purposes of federal habeas review, "clearly established federal law" refers to the holdings, as opposed to dicta, of Supreme Court decisions in effect at the time

of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to clearly established federal law" within the meaning of § 2254(d) if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Id.* at 405–06. A state court decision makes an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of" the case. *Id.* at 413. In construing and applying federal law, even erroneous state court decisions, if deemed reasonable, will survive habeas review. *Id.* at 411. Though, the state court decision need not be "so far off the mark as to suggest judicial incompetence" before habeas relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotations omitted). However, a federal court may reverse a state court ruling only where it was "so lacking in justification that there [is no] possibility for fairminded disagreement." *Vega v. Walsh*, 669 F.3d 123 (2d Cir. 2012) (quoting *Harrington*, 131 S. Ct. at 786–87).

Discussion

A. Due Process Claims

Stewart argues that his due process right to a fair trial was infringed both by the suggestiveness of the lineup which led to his identification and by the misconduct of the prosecution during summation. Respondent attacks at the doorstep, arguing that both of these claims are procedurally defaulted. The state goes on to argue, alternatively, that petitioner's claims are without merit.

1. *Procedural Default*

### a. Independent State Procedural Grounds

Federal habeas review is not available where a claim has already been decided by a state court, and the state court's decision "'rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.'" *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 2439 (2012) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)). Federal courts may not review state court decisions that rest on an adequate and independent state procedural ground unless the petitioner can show both "cause" and "prejudice," or, a fundamental miscarriage of justice. *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50; *Harris v. Reed*, 489 U.S. 255, 262 (1989)).

New York's contemporaneous objection rule, codified in New York Criminal Procedure Law ("CPL") § 470.05(2), is well-expounded in its jurisprudence, and gives an appellate court discretion to decline to review claims that were not sufficiently presented to or ruled upon by the trial court. The rule is "firmly established and regularly followed." As such, federal courts have consistently held this rule to be adequate and independent for the purpose of barring federal habeas review. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 86 (1977); *Murray v. Carrier*, 477 U.S. 478, 485–92, 497 (1986); *Kozlowki v. Hulihan*, 511 F. App'x 21, 25 (2d Cir. 2013) ("We have previously held that New York's contemporaneous objection rule is 'firmly established and regularly followed,' and, therefore, its application ordinarily constitutes an adequate state-law ground for barring federal habeas review.").

With respect to prosecutorial misconduct, respondent correctly notes that the

7

Appellate Division expressly rejected many iterations of petitioner's claim because Stewart's lawyer had not contemporaneously objected to statements made by the prosecutor in her summation. *Stewart*, 51 A.D.3d at 826, 859 N.Y.S.2d at 663–64. Thus, any chance of review has been procedurally defaulted and is barred here.

The state also urges that this same procedural bar must be imposed on elements of Stewart's claim that the lineup was unduly suggestive. The suggestiveness of a lineup is considered at a suppression hearing—commonly referred to as a *Wade* hearing—rather than at trial. Where evidence is developed post-hearing, such as trial testimony, bearing on suggestiveness, ordinarily, a motion to reopen the *Wade* hearing would be forthcoming. Defense counsel did not so move, which prompts the state's argument that review is blocked by a rule of New York appellate practice and cannot rest on trial testimony where a renewed *Wade* hearing was available. Respondent presses that this rule constitutes an adequate and independent state ground for barring the claim on this application. *See, e.g., People v. Gold*, 249 A.D.2d 414, 414, 670 N.Y.S.2d 789 (2d Dep't 1998). This rule, however, has not been afforded the same standing as the contemporaneous objection rule. Courts in the Second Circuit have treated the point it raises as a question of exhaustion. *See Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009). Failure to preserve the issue by re-opening the *Wade* hearing is not necessarily the hobgoblin of federal review that it is for state appellate review.

b. Exhaustion

As a prerequisite for federal habeas review, a petitioner must have "adequately exhausted state remedies by fairly presenting both the factual and legal

premises for his federal claim to the appropriate state courts." *Acosta,* 575 F.3d at 185 (citing *Baldwin v. Reese,* 541 U.S. 27, 30–34 (2003)). In *Acosta,* as in this case, the petitioner sought to challenge the validity of an allegedly suggestive lineup based, in part, on statements made at trial, but did so without seeking to reopen the *Wade* hearing. In this context, though New York's procedural rule itself does not create an independent bar to federal review, the failure to present the claim in the manner the procedural rule requires creates an exhaustion bar—the trial evidence-based claim was never fairly presented for state court consideration. "Where a constitutional challenge to a state court conviction has been presented to the state courts for the first and only time in a procedural context in which its merits will not be considered . . . the claim in such a fashion does not . . . constitute fair presentation." *Id.* at 185–86 (quoting *Castille v. Peoples,* 489 U.S. 346, 351 (1989)) (internal quotations and citations omitted).

There is an exception. The New York rule does not bar a state appellate court from considering a *Wade* claim, in its discretion, even though it was not properly preserved by seeking to reopen a *Wade* hearing. *See People v. Canteen,* 295 A.D.2d 256, 257, 744 N.Y.S.2d 380 (1st Dep't 2002) ("Since defendant never requested that the court reopen the suppression hearing, his claim that his trial testimony established the involuntariness of his statements is unpreserved, and we decline to review it in the interest of justice." (internal citations omitted)). Therefore, if it is clear from the record that the state appellate court did consider the merits of the claim of error in spite of procedural imperfections, the exhaustion requirement has been satisfied. *Id.* at 186. Here, as in *Acosta,* there is no indication that the Appellate

Division considered the merits of Stewart's trial testimony-based claim that the lineup was unconstitutionally suggestive. The district court in *Acosta* found that petitioner's claim was, on similar facts, (a) unexhausted, and (b) procedurally barred. The Second Circuit called the *Acosta* analysis "persuasive." *Acosta*, 575 F.3d at 186. *Acosta*'s persuasive analysis controls here. Petitioner's claim as to the suggestiveness of the lineup based on the trial evidence not presented at a reopened *Wade* hearing is unexhausted. As a result, that claim is dismissed.[2]

### 2. *Merits Arguments*

#### a. Prosecutorial Misconduct

The bar is set high. Absent a showing that the prosecutor's "misconduct" had "so infected the trial with unfairness" as to deny due process, federal habeas relief is unavailable. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation omitted). To find this sort of misconduct, courts examine "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990) (internal quotation omitted). In line with these precedents, a

---

[2] Where a state "prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," procedurally defaulted claims may be reached for federal habeas review. *Coleman*, 501 U.S. at 750. Cause must be grounded on a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner makes no showing of cause with respect either to the contemporaneous objection rule or the failure to exhaust his *Wade* claim based on the victim's trial testimony. Stewart's plea that he is innocent and/or his conviction would lead to a fundamental miscarriage of justice is equally unavailing. He offers no new evidence nor does he substantiate record evidence that would undermine the jury's contrary conclusion. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995).

habeas court must determine whether any of the allegedly improper comments were "minor aberrations in a prolonged trial" as opposed to "cumulative evidence of a proceeding dominated by passion and prejudice." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 240 (1940); *see also United States v. Biasucci*, 786 F.2d 504, 514 (2d Cir. 1986) ("[C]riminal convictions are not to be lightly overturned on the basis of a prosecutor's inappropriate comments standing alone in an otherwise fair proceeding."), *cert. denied*, 479 U.S. 827 (1986); *Gatto v. Hoke*, 809 F. Supp. 1030, 1040 (E.D.N.Y. 1992) ("A criminal conviction will not be overturned on the basis of a prosecutor's remarks in an otherwise fair proceeding.") (citing *United States v. Young*, 470 U.S. 1, 11, 105 (1985)). Moreover, improper comments are considered less egregious if they were "made in response to defense contentions." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981); *see also Moore v. Warden*, 380 F. Supp. 2d 321, 331 (S.D.N.Y. 2005) ("Where a prosecution comment is a rejoinder to defense counsel's comments, that factor ameliorates the effect of an objectionable prosecution comment upon the fairness of a trial."). In the particular context of a challenged summation, the habeas petitioner "must show not simply that a particular summation comment was improper, but that the comment, 'viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him.'" *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012) (quoting *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir.2011)).

Stewart raises a collection of allegedly improper comments that are nonetheless procedurally barred. They are also, in any event, clearly without merit.

For example, one of the offending comments upon which petitioner relies referenced the ages of the participants in the lineup, though the trial evidence was silent on that point. The record, however, was not so silent. It contained photographs of the participants and testimony from NYPD detectives, who had selected fillers "in their forties" or who were "middle-aged" as fillers. (Tr. 975:7–8; 977:15). Notwithstanding, the trial court had admonished the prosecutor and informed the jury that specific evidence of the participants' ages was not in the record. Even if improper, the prosecutor's comment was rendered harmless. (Tr. 1070:18–19). In another instance, the prosecutor criticized defense counsel's cross-examination of Chandola, particularly with respect to the ax used in the robbery. It was in an attempt to respond to the defense summation. But, again, the trial court intervened by sustaining the objections. (Tr. 1082–83:13–17). In a prudent strategic assessment, Stewart's defense attorney raised neither of these complaints in his mistrial application. They would not have carried the day then, and if not barred, would not carry the day now. *Socony-Vacuum*, 310 U.S. at 240.

As to Stewart's remaining prosecutorial misconduct contentions, he provides no specifics—only a summary claim of impropriety. Not surprisingly, respondent retorts in kind with piecemeal focus on various objections sustained at trial. To the extent the issue is framed in a meaningful way, petitioner's mistrial motion best describes it. The episodes of misconduct it highlights, and others of similar stripe the petition suggests, neither singly nor collectively establish the "infection of prejudice" necessary to warrant issuance of the writ.

Recapitulating the claims, Stewart's attorney pointed to, in his mistrial

12

motion, "several *Trowbridge* violations" in the corroboration of Chandola's lineup identification. (Tr. 1122–23:22–5); *see People v. Trowbridge*, 305 N.Y. 471, 476–77, 113 N.E.2d 841 (1953), *superseded in non-relevant part by* CPL § 60.25 (a limitation as to who may testify about a prior identification). The crux of the defense argument at trial was that the prosecution impermissibly bolstered Chandola's identification by commenting on how the police witnesses identified Stewart both in the courtroom and in the photograph shown to Chandola. *Trowbridge*, on the other hand, is concerned with the admission of evidence relating to a pre-trial identification of the defendant, not comments by counsel on evidence actually received at trial. *Trowbridge* is, at best, inapposite.

Also on petitioner's list is a flap over the prosecutor's disregard of the trial court's directive not to display a photograph of Stewart while standing next to him. (Tr. 1124:2–8). The incident of alleged disregard, as might be expected, is not reflected itself in the record, but, rather, is described in the mistrial application. Additionally, of course, the record reflects the trial court's advice regarding the prosecutor's redundancy: "We know where the defendant is sitting. We don't need for every other sentence . . . to remind us where the defendant is." (Tr. 1060–61:20–2). Summation or questioning in redundant form can be irritating, but is hardly prejudicial. Assuming all of these asides took place in violation of the trial court's orders, it is hard to divine what the prejudice was, or, more importantly, that the trial court's finding that no prejudice or unfairness warranting a mistrial had occurred was in some way constitutionally erroneous.

The next skirmish was over the defense claim that, in her summation, the

prosecutor had "mischaracterized" the argument defense counsel offered on summation that NYPD had set Stewart up for misidentification by the victim. The prosecutor, the defense claimed, had presented that defense argument as having developed the theory of a "grand conspiracy between the complaining witness and the police to frame the defendant." Instead, the defense submitted that its summation was meant only to suggest that "the police set up the lineup in such a way that the defendant was picked out," and that the prosecutor's hyperbolic representation of the defense case was prejudicial. (Tr. 1124:9–22). But, while rhetorically extravagant, perhaps, the People's response to the defense's closing argument did not take inappropriate liberties. *See Moore*, 380 F. Supp. 2d at 331 (finding that challenged remarks made in response to defense theories do not have a substantial prejudicial effect) (citing *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir.1998); *United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir.1989); *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981)).

In a more significant, but equally unavailing assignment of error, petitioner highlights his trial objection to an impermissible inference, drawn by the prosecutor, connecting Stewart to the Cadillac found by the police. (Tr. 1123:6–19). The record shows, however, that the trial court interrupted the summation to deliver a strong curative instruction to the jury, directing them to

> [M]ake a judgment based on the record that exists in this case as to whether or not there is a connection between that car and this defendant . . . it should not be speculated but should be [a] clear connection between the evidence . . . and this defendant. And there was an objection by counsel and that objection is sustained.

(Tr. 1064:12–24). Given this immediate, stern, and clear curative action, the Court

finds no reason to conclude that the improper remarks were so egregious as to create undue prejudice or render the trial unfair. *See Floyd*, 907 F.2d at 355.

Cut from the same cloth are Stewart's last two allegations of prosecutorial misconduct. The first is the prosecutor's suggestion in closing argument that Stewart, by shaving his mustache, showed that he was conscious of guilt and attempting to avoid identification by Chandola. (Tr. 1121–22:18–6). The second centers on the prosecutor's explanation that Stewart went along with the police request that he participate in the lineup because he knew "the gig was up." (Tr. 1122:7–12). In both instances, the trial court took immediate corrective action, harshly upbraiding the prosecutor. Specifically, the court declared the accusation that Stewart was conscious of guilt to be "absolutely improper," (Tr. 1084:22), and, with respect in the latter impropriety, the court was so struck as to rebuke belittlingly: "Counsel, what the heck was that, the gig is up?" (Tr. 1067:4–5).

There is, moreover, little new under the sun. Courts in this district have, in the past, dealt with similarly improper statements, and rejected them as grounds for habeas relief. *See, e.g., Morales v. Walsh*, 05-cv-2251, 2008 WL 2047632 at *8 (E.D.N.Y. 2008) (finding that, although "arguably improper", a baseless accusation in summation that the defendant had shown consciousness of guilt had not "so infected the trial with unfairness as to make the resulting conviction a denial of due process." (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974))).

On the other hand, though the jury had been at other points charged not to regard the statements in summation as evidence, *see* (Tr. 1064:12–19; 1106:2–7), and the plain words of the trial court's reaction unmistakably conveyed its

15

determination that the prosecutor's words were seriously improper and were to be disregarded, the trial court did not dot the "i's" and cross the "t's" by actually instructing the jury to do the obvious—disregard them. Furthermore, these concerns take on added significance because the weight of evidence against petitioner is overwhelming only if Chandola's identification is credited, making it harder to dismiss any serious misconduct as harmless error. *See Dunn v. Sears*, 561 F. Supp. 2d 444, 458 (S.D.N.Y. 2008) ("If there is clear evidence of guilt, prosecutorial misconduct on summation is considered harmless error." (citing *Garofolo v. Coomb*, 804 F.2d 201, 206 (2d Cir. 1986))).

Just the same, the weight of authority is against finding prejudice to Stewart in this case. The challenged remarks were brief, fleeting, and isolated. They were nowhere close to the type of misconduct in *Floyd v. Meachem*, where the prosecution made comments more severe than those considered here "literally dozens of times," without the kind of proactive judicial intervention evident here. 907 F.2d at 354. "[T]he brevity and fleeting nature of improper comments," not the repeated barrage in *Floyd*, the Second Circuit has recognized, serve to mitigate their severity, *Tankleff v. Senkowski*, 135 F.3d 235, 253 (2d Cir. 1998), and "standard instructions given by the trial court [are] probably sufficient to cure any harm" done by comments of this nature. *Id.*; *see Morales*, 2008 WL 2047632 at *8 (finding jury instructions that summations were not evidence, about reasonable doubt, and about the burden of proof remedied an improper summation comment alleging consciousness of guilt).

It is plain that this is not a case where the prosecutor's remarks were a "clear

or even probable" but-for cause of the guilty verdict. The jury was adequately advised by the trial court's reactions unmistakenly identifying prosecutorial misconduct, and its clear charge, including instructions, oft repeated, as to the People's burden of proof, of the jury's duty concerning inferences, and on the nature and credibility of evidence. *Cf. Morales*, 2008 WL 2047632 at *8. In *Floyd*, unlike Stewart's case, habeas was granted because it was "by no means clear or even probable that [petitioner] would have been convicted absent the prosecutor's misconduct." 907 F.2d at 356. Viewed in their totality, the trial court's immediate responses to prosecutorial improprieties and the instructions given by the court to the jury, if followed, would have muted the improprieties and strongly militate against finding constitutional error. It is presumed that the jury did follow those instructions. *See Kanani v. Phillips*, No. 03-civ-2534, 2004 WL 2296128 (S.D.N.Y. 2004), *adopted*, 2005 WL 2431416 (S.D.N.Y. 2005) ("Limiting instructions have been found to militate against a finding of constitutional error"); *Peakes v. Spitzer*, 04-civ-1342, 2004 WL 1366056 at *18 n. 29 (S.D.N.Y. 2004) ("The jury is presumed to obey a court's curative instruction"); *Cruz v. Greiner*, 98-civ-7839, 1999 WL 1043961 at *31, n. 26 (S.D.N.Y. 1999) (rejecting argument that "if you throw a skunk into the jury box, you can't instruct the jury not to smell it", ruling that instructions to disregard inadmissible evidence made any prosecutorial misconduct harmless error).

Even more critically, this is an AEDPA case. Regardless of whether the Court were to find, and it does not, that the prosecutor's improper comments so infected the trial with such unfairness as to constitute a denial of due process, the Appellate

Division did not so find. It concluded that Stewart's objections to these comments were "without merit, particularly given the broad bounds of rhetorical comment permissible in closing arguments." *Stewart*, 51 A.D.3d at 827, 859 N.Y.S.2d at 663. That finding was not contrary to, or an unreasonable application of, federal law. It will not be disturbed on Stewart's petition.

### b. Suggestive Lineup

Returning to the issue of Stewart's lineup, as is made clear above, petitioner's objections are procedurally barred, but even if they were not, they would not overcome the rigorous standards of deference required by AEDPA.

Pretrial identifications which are unduly suggestive violate the due process rights of a defendant and, therefore, are not admissible at trial to determine the guilt or innocence of the accused. *People v. Chipp*, 75 N.Y.2d 327, 335, 553 N.Y.S.2d 72, 552 N.E.2d 608 (1990) (citing *United States v. Wade*, 388 U.S. 218 (1967)). The Supreme Court has held that "[i]t is the likelihood of misidentification which violates a defendant's right to due process," making an identification procedure that leads to a very substantial likelihood of misidentification the "primary evil to be avoided." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Id.*

Put another way, "the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001) (internal citations omitted). With

18

respect to the first inquiry, "[a] lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not." *Id.* at 134. The factors to be considered in determining reliability "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199–200. No one factor, in and of itself, is dispositive. *Raheem*, 257 F.3d at 135 (citing *Biggers*, 409 U.S. at 199–200).

Petitioner notes that Chandola had identified the man who robbed him as having a dark mustache, (Suppress. Hr'g Tr. 25:28–29), and argues that, because he was the only man in the lineup with a thick, dark mustache, the lineup was unduly suggestive. In attacking Chandola's reliability, Stewart points to the fact that Chandola was allegedly told by his assailant not to look at his face during the robbery, though it also appears that the two had chatted for some time before Chandola was attacked. (Tr. 595–97:10–22; 779:7–25; 799–800:7–25). Chandola made his identification of Stewart the next day. (Suppress. Hr'6 Tr. 13–14: 23–2; 15:21–5).

Far from carrying the day, Stewart's claim of suggestiveness is overstated and meritless. At the *Wade* hearing, Stewart urged that because he had a "Groucho Marx"-esque black mustache, he was most distinctive in appearance, somehow unfairly tilting in favor of his selection. (Suppress. Hr'g Tr. 95:17–25). While one filler did not have a mustache, another had a rather light-colored one, and a third

had a goatee along with a mustache, (*Id.* at 37:1–25), Stewart was not alone in the lineup in meeting Chandola's description of a white male, around age 50, with a dark mustache. With other dark-mustachioed men joining him as fillers, Stewart did not "so [stand] out from the other participants as to suggest to the witness [that he] was the culprit." *United States v. Wong*, 40 F.3d 1347, 1359–60 (2d Cir. 1994). The contention that the lineup was suggestive because Stewart had, in essence, the most interesting or flashy mustache, is altogether unpersuasive. Chandola did not tell the police that he had been attacked by a man with a "Groucho Marx" mustache or give any facial hair description beyond dark and thick. What counts on this measure is what Chandola told police. In that framework, Stewart was not the only man in the lineup meeting the description Chandola gave. *See West v. Greiner*, 01-cv-1267, 2004 WL 315247 (E.D.N.Y. 2004) ("The focus of the inquiry is not whether the suspect has a distinctive feature not shared by the other participants, but whether that [unshared] feature matches the description provided by the witness.").

Similarly, Stewart fails to undermine Chandola's reliability as an observer. There is not the slightest doubt that Chandola had plenty of opportunity to view his assailant throughout his ordeal, from their initial conversation until the robber made his escape. *E.g.* (Tr. 603:16–19; 614:8–12). Very little time passed, moreover, between the robbery and the lineup. Chandola, further, was quite certain in his identification of Stewart at the lineup. Petitioner argues vainly that Chandola's identification should be questioned because he was not wearing his prescription

eyeglasses[3] at the time of the robbery, because he had been awake for quite a long time before the robbery, and because he heard that the police had a suspect in custody before viewing the lineup. *See People v. Warren*, 742 50 A.D.3d 706, 854 N.Y.S.2d 742 (2008) (collecting cases and noting that "an identification is not 'automatically contaminated' by a remark that a suspect is in custody or that a suspect will appear in the lineup" (quoting *People v. Rodriguez*, 64 N.Y.2d 738, 740–41, 475 N.E.2d 443 (1984))). Set against this appeal to doubt, of course, the fact remains that Chandola's description of the suspect accurately captured Stewart's characteristics. Even if AEDPA were to permit it, and it does not, the Court would not disturb the conclusion of the state courts that the lineup was not suggestive, that Chandola's identification was reliable, and that the admission of Chandola's identification testimony at trial did not violate due process.

For the foregoing reasons, the Court finds all of Stewart's claims sounding in due process to be of insufficient merit to disturb the judgment of the Appellate Division.

## B. Ineffective Assistance of Counsel

Finally, Stewart's separate ineffective assistance claims rest on trial counsel's failure to seek to re-open the *Wade* hearing to attack the lineup identification based on Chandola's testimony at trial. A habeas petitioner advancing such a claim must "meet both a 'performance' test, showing that counsel's representation 'fell below an objective standard of reasonableness,' and a 'prejudice' test, demonstrating that

---

[3] Chandola also testified to having 20/20 vision without glasses. (Tr. 772–73:1–25).

'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 688, 694 (1984)); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1404 (2011), *reh'g denied*, 131 S. Ct. 2951 (2011) (quoting *Harrington*, 131 S. Ct. at 791) ("[R]easonable probability" has been defined as "a 'substantial,' not just 'conceivable,' likelihood of a different result."). Because of the inherently deferential nature of the *Strickland* standard, "[a] criminal defendant has a high burden to overcome to prove the deficiency of counsel." *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006). For habeas petitioners, this burden is "enhanced by the hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]." *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006) (quoting *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003)); *see also Pinholster*, 131 S. Ct. at 1403 (The standard of review for ineffective assistance claims in the habeas context is "doubly deferential" because courts take a "highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (internal citations omitted)).

Petitioner's argument falls flat. Stewart cannot show that his lawyer's performance fell below an objective standard of reasonableness, or that the result prejudiced him. Coming to grips with the hypothetical motion to reopen the *Wade* hearing is essential. To begin, in order to reopen a *Wade* hearing, the movant must offer "additional pertinent facts [that] have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion." CPL § 710.40(4). Moreover, the Second Circuit, in considering habeas

petitions turning on an attorney's failure to open or reopen a *Wade* hearing, "has demanded some showing of the likelihood for success at the hearing," and success will require more than the elicitation of "inconsistent statements" surrounding an identification. *Lynn*, 443 F.3d at 249; *accord Maldonado v. Burge*, 697 F. Supp. 2d 516, 542 (S.D.N.Y. 2010) ("Petitioner must show that the *Wade* claim was meritorious and that a reasonable probability exists that, but for counsel's alleged error in failing to move to reopen the Wade hearing, the outcome of the trial would have been different.").

At trial, Stewart's counsel elicited inconsistent statements from Chandola and the investigating detectives about whether Chandola had been told that a suspect was in custody before he viewed the lineup. Also prior to the lineup, Chandola testified at trial, under defense questioning, he had identified the ax and Cadillac. Stewart urges that this testimony constitutes "new evidence" bearing on suggestiveness sufficient, if so moved, to require a reopening of the *Wade* hearing.

Not so. First, that a witness has knowledge that a suspect is in custody does not render all subsequent lineups unreasonably suggestive. *Rodriguez*, 64 N.Y.2d at 740–41; *Warren*, 50 A.D.3d at 706–07, 854 N.Y.S.2d at 742; *accord Maldonado*, 697 F. Supp. 2d at 535. Unlike other cases alleging ineffective assistance of counsel for failure to seek to reopen a *Wade* hearing, here, no truly new information about how the actual lineup was conducted came to light at trial. *C.f. Maldonado*, 697 F. Supp. 2d at 542 (involving new information about the clothing reportedly worn by the suspect and lineup participants). Bluntly, Stewart advances no reason now, nor could he have at trial, to support a finding that additional pertinent facts likely to

bear on the outcome of the *Wade* hearing had come to light at trial. There was nothing for counsel to present to support reopening of the suppression hearing. Accordingly, petitioner has failed to demonstrate that the Appellate Division's conclusion, that he was not denied effective assistance of counsel at trial by counsel's failure to seek to reopen the *Wade* hearing, was an erroneous application of federal law, much less an unreasonable one.

## Conclusion

For the foregoing reasons, Stewart's application for a writ of *habeas corpus* is denied and his petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to enter judgment for respondent and to close this case.

SO ORDERED.

Dated:     Brooklyn, New York
          June 28, 2014

s/Eric N. Vitaliano

**ERIC N. VITALIANO**
**United States District Judge**